All right, we'll call the next case. Case number 12-1416, Wendy Palacios v. Gremery Mlot. All right, both attorneys that are going to present oral arguments, step up and identify yourselves for the record, please. Ellen O'Rourke for Third Party Defendant Michael Durbin. And Robert Friedian on behalf of Defendants Appellants Gregory Mlot and DMD Services. Each side, I don't know if you were all here earlier, will have about 15 minutes to present argument from this. You may save some time for rebuttal. May it please the court, counsel, again, Robert Friedian on behalf of the Defendant Appellants. Your Honors, this case arises from a three-car motor vehicle accident involving drivers Levita Gale, Michael Durbin, and Gregory Mlot. Levita Gale was the driver of the vehicle in front of the other two vehicles, Durbin was in the middle, and Mlot was the third vehicle in this motor vehicle accident. As a result of the motor vehicle accident, both Wendy Palacios and Michael Durbin filed suit against my clients, Mlot and DMD Services. Shortly after, I'll back up for a second, Palacios sued the two drivers, Mlot and Durbin, initially in her lawsuit. And then approximately 10 days after Durbin was served with process in the Palacios suit, she voluntarily dismissed him from the case. Mlot and DMD thereafter filed a third-party contribution action against Durbin, and later on, more than two years after the accident, and more than one year after Palacios could have refiled against Durbin under the voluntary dismissal statute, they entered into a settlement agreement in the amount of $3,000. They then moved for a good-faith finding. The defendants objected to that. The court did hold a hearing on the defendant's objection, overruled that objection, and found that the settlement was in good faith. This case comes to you on appeal because we believe that the court abused its discretion in finding that the settlement was in good faith. You could plot a point out that these two individuals rode together and they worked together, and therefore, they must have had a friendship that would, for the court to find it not a good-faith settlement. Now, I've worked with many people that I can't stand, and I've played golf with them that I can't stand. Of course, no one on this panel. Why do you make a point that just because they work together, it has to be not a good-faith settlement? Well, Judge, that's not the only reason that we are claiming that it's not a good-faith settlement, but the Worsing case tells us that a relationship between the settlement parties is a consideration when the court looks at the totality of the circumstances. But that case involved close family friends, didn't it? Wasn't the evidence sort of clear that they were very close? Well, I looked and read that decision. I'm sorry? She wasn't even sued. The person didn't even sue her best friend. Right. Well, as I read the case, the objecting defendant made an allegation of a close personal relationship. I don't believe that the appellate court in Worsing ever made a determination as to the nature of that relationship. Well, I thought the court did point out that he was a close personal friend of the family, or she. I believe, Judge. And, Justice Taylor, just to point out, there was no suit even filed against that party. Correct. Correct. And in this case, we have suit initially being filed against Durbin by Palacios, and then 10 days after he served, a voluntary dismissal of that claim by Palacios. So, in any event, the specific wording, as I read the Worsing case, is that there just has to be a relationship between the parties. I know that the courts have since referred to close personal relationship, but the wording where they conclude that it must have been collusive or the reason why the plaintiff did not sue the settling third-party defendant was due to that relationship. But what about Johnson, then, where the two individuals got married after? I mean, there's a real close personal relationship. Right. And the court said that was okay. The Supreme Court said it was okay. Yeah, under different circumstances than exist in this case. Well, in this case, you've got medical damages of $24,000, and you have a settlement of $3,000. And you have testimony from the driver and the complainant here, that immediately after they were struck by the car Malat was driving, that he said he was sorry, he must have been phased out or dazed out or something. He was on the cell phone, and he hit them, and it was his fault. That is in this case. At least there's a suggestion of that. True? Then, apparently, there's testimony that is objected to, that the police report indicates that he also admitted to the police officer that it was his fault that this accident occurred. Malat never made an admission that the accident was his fault. Well, no, but I thought the testimony was from the plaintiff and the driver that he did say he was sorry that he caused the accident. And then the woman in front of them, Ms. Gale, said that she was struck. There's some question about whether there was one big bump or one big bump and then something less. Well, the statement that I'm sorry for hitting your vehicle is not necessarily indicative of an admission of fault. Well, did he say anything else according to the plaintiff in this case? Did he say more than that? Malat only said, I believe, he only said that he was sorry. He specifically denied making any admission that the accident was his fault. Well, what does I'm sorry mean? I'm sorry means I'm sorry I hit your vehicle. It's not necessarily an indication that I'm sorry I hit your vehicle. Well, we're looking at whether the trial judge here abused her discretion when she made a good-faith settlement, that the $3,000 was a good-faith settlement based upon everything that was presented. Right. I mean, it's a pretty high hurdle for us to say that no reasonable person would have agreed with what she did. Well, there were a couple of things that we believe the trial courts made errors in. Actually, I'm sorry. That's the manifest weight standard. The abuse of discretion is fanciful, arbitrary, and somewhat capricious, isn't it? That's the standard for abuse of discretion. As I understand it, abuse of discretion is that the decision was not based on the record in front of the judge, the evidentiary record. And in this case, there were a couple of errors we believe that the judge made during the hearing on the motion. Number one, she concluded several times that the evidence in this case only showed one impact to the Gail vehicle. When Gail testified unequivocally that there were two impacts to her vehicle. She wasn't really sure. She said, yeah, there was two, or it could have been another accident that I had, or I really don't remember. When she was initially asked how many impacts, she very clearly stated there were two, a hard one and then a bump. Later on, she obviously equivocated a little bit. But no one ever really tied that equivocation to this other accident that she threw out there. She was fuzzy on a number of details. We all know that. But she was really not fuzzy on the fact that she had or felt two impacts into her vehicle. So number one, we believe that the court erred for concluding that the evidence in this case only showed one impact. And in addition to Gail's testimony. Well, is it completely unreasonable for the court to base part of the decision on the fact that this car was rear-ended by Malott's car? I mean, is there some basic error in her concluding that maybe Malott was the one that caused the accident because he hit that car from behind? I mean, is that kind of unreasonable? Or is that kind of a basic thing that, you know, if you hit somebody from behind, you might be the one that wasn't paying attention? Well, again, we have a three-vehicle accident here. And so the question is really what it boils down to is who hit who first. Okay? And so the evidence in this case that supports Durbin hit the Gail vehicle first is the testimony by Durbin himself that his taillights were working on the day of the accident. Malott's testimony that he did not see brake lights illuminated before the accident happened. And Palacios' testimony that on the initial impact, her body was propelled forward. Now, we all know, based on the law of physics, that if you are rear-ended by a vehicle, your body is going to move backwards and not forward. So all of these things taken together strongly suggest that it was Michael Durbin rear-ending the Gail vehicle first, and that would account for the hard impact that Gail herself testified to, and that Malott thereafter ran into the rear of the Durbin vehicle, which apparently then pushed it into the Gail vehicle for that small bump that she described. So the circuit court did not take this evidence into consideration, and the liability of the settling parties is one of the considerations that the trial court has, or the potential liability of the settling party. And so we submit that this evidence strongly suggests that Durbin is the one whose vehicle made the initial impact in this accident and thereafter was rear-ended by Malott. So that's one thing. The other thing was the explanation or non-explanation by Palacios or Durbin as to why Palacios initially sued Durbin and then 10 days after he served with process voluntarily dismisses him. They suggested that perhaps they didn't want to run into Rule 137 sanctions in dismissing him, but we all know Rule 137 requires a good-faith investigation prior to filing suit, not after suit is filed. Not only that, all Palacios' attorney had to do was interview his own client as to the circumstances surrounding the accident, and if there was no good-faith basis to sue Durbin, he would have learned that during the initial interview of his client. So the explanation that they were offering does not make any sense as to why. What about the fact that they settled after the statute of limitations had run? I'm sorry? What about the fact that they settled the $3,000 settlement was after the statute of limitations or a year after the voluntary dismissal? Right. And meaning, of course, at that point she could not have then reinstituted her claim against Durbin. And this was after, by the way, we had obtained this discovery from Levita Gayle and the testimony of the other drivers, which again strongly suggests that Durbin was the driver who made the initial impact in this accident. So the fact that they waited until Durbin could no longer be brought back in as a direct defendant in the Palacios case also suggests that this settlement agreement was collusive between the two. Any further? I'm sorry? Do you wish to add something further? No, I would just conclude that based on the errors that the circuit court made in analyzing the evidence, we believe that constituted an abuse of discretion in finding that the settlement was in good faith, and we ask for a reversal of that ruling.  Ms. O'Rourke. May it please the Court, Counsel. Illinois law is very clear that once third-party defendant Durbin made a preliminary showing of good faith, that then the third-party plaintiffs had the burden of proving by the preponderance of the evidence that the settlement was not in good faith. Good faith of the settlement is the only limitation that the Joint Contribution Tort Procedure Act places on the right to settle. Illinois law is also clear that public policy strongly favors the peaceful and voluntary resolution of claims, and in Johnson v. United Airlines, the Supreme Court of Illinois reiterated that point. It's also very clear, as this Court just pointed out, that when a good faith settlement is approved by the circuit court, the standard of review is an abuse of discretion standard. That is a very high standard, and the law is clear that whether a settlement satisfies the good faith requirement is a matter left to the discretion of the trial court based upon that court's consideration of the totality of the circumstances. Illinois Supreme Court has said that that circuit court is in the best position to make that determination, and only if that decision by the circuit court is beyond all bounds of reason should that be overturned. In this case, plaintiff alleges the circuit court abused its discretion here in essentially three ways. One, that it considered the police report, and it shouldn't have done that. Two, that it failed to apply properly the Warsing v. Wandel case. And three, a plaintiff contended in their brief, third-party plaintiffs, that the judge ignored Levita Gales, who was the first car, her testimony that supported third-party plaintiffs' theory. None of those, if you look at the record, hold up under scrutiny. In this case, the court looked at the police report. It's true. But the circuit court in this case held, in essence, as the judge stated, an evidentiary hearing, which was above and beyond, actually, what the circuit court has to do, because the Illinois Supreme Court, in this court, has stated there is no need to even hold an evidentiary hearing. This court, in this case, thoroughly, as the record shows, went over all of the evidence in this case. That was multiple testimony through depositions, as well as the police report. It was not simply looking at a police report, but all of the deposition testimonies reviewed. So did she review the two depositions of your client and also the passenger, the plaintiff in this case, Wendy? She absolutely did, and she referred to that in the ruling. And in their depositions, both of them state that he, Malott, immediately after the accident, said that he must have pushed on the accelerator instead of the brake, and he said he was sorry. Wasn't that what their depositions revealed? Wendy Palacios, who is the plaintiff in this case, testified that she overheard him, this is Malott, talking to Michael Durbin, and he said that he was sorry and that he must have dazed out. Third-party plaintiff Malott testified at his own deposition. He wasn't sure whether he was looking at the car in front of him or in his rearview mirror when the accident happened. So he couldn't even testify whether he was looking at the road when the accident happened. The judge took all of that into consideration when she made the ruling that the settlement was in good faith. She looked carefully at the totality of the circumstances and determined the settlement was in good faith. And she looked very carefully at this Worsing testimony, the Worsing case, which I want to discuss in a minute. The plaintiff contends that the circuit court abused its discretion when it distinguished Worsing, but Worsing was a very different situation. It did involve, and the court said this in Worsing, a very close relationship between the plaintiff and the third-party defendant in that case. That was part of the record in Worsing. It was a very close relationship. After the third complaint was filed against Wandel in Worsing, the plaintiff settled with Wandel for the amount of $1,000, despite the fact that the evidence in that case pointed very heavily to the fact that Wandel, who was the third-party defendant, was primarily at fault for the accident because he was driving the forklift that went off of the ramp and then killed the decedent. The appellate court held in that the settlement was suspicious based on the close relationship and found it suspicious that the plaintiff never brought suit at all against the forklift operator, despite the evidence that showed he was very primarily at fault in that case. The court said the totality of the circumstances, not just one factor, but the totality in Worsing created suspicion. In the present case, unlike in Worsing, there is no close personal relationship between plaintiff and third-party defendant Michael Durbin. No one has testified to that. They were work colleagues. They would drive together sometimes. They worked in salon development, and so it required them sometimes to drive to a salon together. But they both testified they didn't even work daily together. This wasn't a close relationship. So why settle after the statute of limitations? Sorry? Why settle after the statute of limitations? I mean, you didn't have any duty to. Well, I think there's a number of reasons why they'd want to settle. Defendant, of course, third-party defendant, is still involved in the case when it's clearly third-party defendant's determination that they shouldn't be. Why bring them in in the first place, I think, comes to mind. Why did plaintiff even sue in the first place? There is the issue of 137 sanctions. But they voluntarily dismissed, so that's up. They did, but were brought back in as a third-party defendant. There wouldn't be sanctions against her then. There wouldn't be sanctions against the plaintiff for a third-party defendant. Perhaps, perhaps not. But I think what's clear in this case is, if you look at the case of, this is an only Supreme Court case, Ballweg versus City of Springfield. In that case, there was a third-party defendant. Appellate court held that because the cause of action against Henrici, which was the third-party defendant, was barred by the statute of limitations, it lacked consideration and thus didn't constitute a good case. But the Supreme Court said, admittedly, the plaintiff's cause of action against third-party defendant could have been barred by the statute. However, as we stated in Doyle versus Rose, the potential for tort liability exists until the defense is established. Since the statute had not been raised, Henrici was still potentially liable and therefore consideration was given by the plaintiff for the settlement. Does the same principle hold true with regard to the fact that the one-year time frame within which to reinstate a voluntary dismissal has passed? I think it absolutely does. I think it absolutely does. The Joint Tort Fees or Contribution Act allows settlements like this to occur. They don't place limitations where you have to actually explain why you're settling. And, in fact, in the case of... Well, my question is more specific. Yes. Is the rule from Baldwin that relates to the fact that, you know, I mean, when somebody raises the statute of limitations, there are all kinds of ins and outs with regard to the statute of limitations, when it will apply, when it wouldn't apply. There's the discovery rule. There's all kinds of things. So my question is, does the principle of Baldwin that until the defense is raised, there's still the potential liability, does that hold true also for this one-year time within which to refile a voluntary dismissal? Because I guess I'm not clear on the question. Because she did not refile it during that time? Baldwin says that, you know, simply because the statute of limitations has potentially run and that party could no longer be sued, that doesn't necessarily mean that the settlement was collusive. Does that hold true also for the additional fact that in this case, that's not in the Baldwin case, the additional fact that there was a voluntary dismissal and you have the one-year to reinstate that's passed? I believe it does. I believe it does. Tell me why you believe it does. Well, Your Honor, one year had passed and so she could not refile the suit. I don't think that's different necessarily than the Baldwin situation. So I'm not seeing, I suppose, a difference there between this and the Baldwin situation. Additionally, that was not raised. Further, the law is clear, and I believe it may have even been Johnson v. United Airlines, where plaintiffs alleged, well, the reason that the settlement was reached was because of a form of nonconvenience issue. That was the Johnson v. United Airlines case. And the court said that may have been part of the reason why it was settled, but the Joint Tort Fears of Contribution Act is clear, and the law is clear. There has to be a showing of collusion or bad faith, and there's not. And respectfully, I don't believe that we can read into the act more than is there. It is not the third-party defendant here, once we have shown there's a good faith, the prima facie case of good faith, it's not then the burden of that third-party defendant to then explain it. It's the burden, by preponderance of the evidence, of the third-party plaintiff here, who's objecting to it, to show how it's collusive or how it's in bad faith. And plaintiffs made that comment in their briefs. Well, you didn't set forth why it was dismissed or what you looked at. Well, that's not required by the act, and I don't think the court can read more into that. Well, the act doesn't state that. Once there is a prima facie case of a legal settlement, then it's up to the objecting party to prove that. And in this case, again, the circuit court, at length, looked at the record and actually held an evidentiary hearing and found that there was no evidence of bad faith. Looking again at the totality of the circumstances. Very different situation than Warsing. And in terms, I want to talk just briefly about the Levita Gayle testimony, because a third-party plaintiff relies heavily on that testimony, saying there's evidence of negligence. Levita Gayle, if you look at her testimony, testified time and again, it's fuzzy, it's really fuzzy, it's very fuzzy, it was a blur, get me a hypnotist, it's not in the forefront of my brain, I could be combining it with the other accident. My memory was fresher back then when she testified there was only one impact shortly after the accident. Her testimony is murky, to say the best. And the court took that into consideration in holding that. The totality, again, of the circumstances, the $3,000 payment, was reasonable given the evidence before the court. This was, again, within the circuit court's discretion to do this. Third-party defendants met their burden of showing that there was a prima facie good faith settlement, there was a legal settlement between the two parties. The law does not require more than that at that point. It was then up to third-party plaintiffs to then come forward and meet their burden. And they did not do that in this case. And again, the court has that discretion, the circuit court, to look at the totality of the circumstances and make the determination. And again, in this case, the circuit court held a full evidentiary hearing and had a very lengthy and well-reasoned decision, listed all of the reasons why, pointing to exact testimony that was from the depositions, and carefully discussing the Warsing case. This case is much more actually on point with Johnson versus United Airlines case than Warsing, and the court recognized that. The court's decision in this case was not, again, beyond all bounds of reason. It was very reasonable based on the evidence. And as in Johnson, the court did not place emphasis on any single factor, but it looked at all of them. There was no evidence of collusion in this case, which has to be shown. Plaintiffs and third-party defendants didn't have a close relationship. Liabilities seemed to be predominantly, if not entirely, against third-party plaintiff Malott. And the court, again, held an evidentiary hearing, even asked for that liability. One thing I want to point out, too, is, again, as I noted, the court went above and beyond there. What they had to do in holding an evidentiary hearing, Illinois courts very clearly have stated that they don't like the idea of a ratio and having to even make that determination, that the court should never get to that because two parties are allowed to settle with each other. And in this case, this is what they do. So court doesn't like the ratio of determined even liability. The court, again, went beyond and beyond and did that in this case. Plaintiffs' own testimony supports that there is no liability against third-party defendant Durbin. She was riding in the car. It's our contention that Durbin should not have been sued to begin with. But Durbin settled this case. Of course, there's valid reasons as to why he would settle the case and want to be out of the case at that point. The court's decision was well-reasoned. It was within the circuit court's discretion, and so it should be upheld. We ask, therefore, Your Honors, that you affirm the circuit court's decision in granting the order that this was a good-faith settlement. Thank you. Thank you. Counsel? Thank you, Judge. Just a few points in rebuttal. We all know that the Contribution Act has two purposes, one to encourage settlement and two for the equitable apportionment of damages, and that's really what this appeal is about, which is the equitable apportionment of damages. We have a plaintiff claiming $24,000 in medical specials, and she settles with Durbin for $3,000. I've already pointed out to you the evidence in this case that suggests that Durbin was the cause of the initial impact between the three vehicles, and if a trier of fact believes that testimony, then we have the primary tort fees are settling out of a case, seeking an excess of $50,000 for the mere price of $3,000, thereby shifting inequitably the apportionment of damages onto my clients. Again, I would just ---- So where's the breaking point? How much would you want him to settle for as a good-faith settlement, even though we're not supposed to look at the numbers? Well, I don't know that I can't give you a specific number, of course, Judge, because I don't even know what a jury is going to find in terms of ---- So if he settled for $24,000, you would still be before us? $24,000? Maybe, maybe not. I don't know. I can tell you unequivocally that $3,000 does not meet the threshold that would give us a second thought as to whether this was good faith or not. $3,000 in this case very clearly is not good faith in this case. Again, I just go back and reiterate that our primary complaint with the hearing that the circuit court held is the judge's conclusion that there was no evidence of two impacts when the evidentiary record clearly shows that there was. And then not only the relationship between Durbin and Palacios, but the procedural history of this case. I did go back and look at the Worsing case, and I did find the only statement that they made, and again, I didn't see anything that suggested that the Worsing court found this close personal relationship between the two parties. Again, there were allegations made by the objecting defendant, but nothing that the appellate court made a specific finding on. I don't know if they accepted that or not. It's just not explained in the opinion. So, again, based on the errors that we believe the circuit court made in coming to its conclusion, the factual errors we believe, that constitutes an abuse of discretion and ask for reversal of that finding. All right, thank you. The case was well-argued and well-briefed, and we will take it under advisement.